The AMERICAN ASYLUM at *Hartford* for the education and instruction of the Deaf and Dumb *against* The President, Directors and Company of the PHOENIX BANK.

A corporation having for its sole object the education and instruction of the Deaf and Dumb ; supporting and instructing indigent persons of that class gratuitously, and receiving a pecuniary compensation from pupils of ability to make it ; deriving its means of dispensing charity from the donations of individuals and of the public ; and applying its funds exclusively to the general object of its institution ; is an incorporated school for charitable purposes.

A writ of *mandamus* does not lie to enforce a private right ; nor where there is another specific remedy ; nor where satisfaction, equivalent to specific relief, may be had, in an action on the case.

A writ of *mandamus* is merely prospective : Therefore, where the exigencies of the case require redress for the past privation of a right, as well as restoration to the enjoyment of it in future, the appropriate remedy is not by writ of *mandamus*, but by bill in chancery.

This was a bill in chancery, stating, That the General Assembly of this state, at their session in *May*, 1816, passed an act, constituting *John Caldwell* and others a body politic and corporate, by the name of " *The Connecticut Asylum for the education and instruction of the Deaf and Dumb*," which in *May*, 1819, upon the application of the corporation, was altered to " *The American Asylum at Hartford for the education and instruction of the Deaf and Dumb ;*" that this institution was located and established at *Hartford*, with the right of purchasing, receiving and holding estate, real and personal, the annual income of which should not exceed 5000 dollars ; that by the act incorporating the *Phoenix Bank*, it is, among other things, enacted, " that the said bank shall, at all times, be open for subscriptions, at the rate of 100 dollars for each share, from the school fund of this state, and from the funds of any college, ecclesiastical society, school or corporation for charitable purposes, within this state ;" that the corporation of the plaintiffs is a charitable institution, their only object being the education and instruction of the unfortunate

persons, who are deaf and dumb, for whom a school is kept, to instruct them in the branches of education usually taught in our common schools; that the only means the institution possesses are derived from the charity of individuals and of the public, and a part of the moneys thus received is again distributed in aiding in the education of those of the deaf and dumb who are proper objects of charity; that the directors of the institution, anxious to accomplish the object of the trust, in the best manner, and to vest the moneys with which they are entrusted where they might derive the largest and most permanent semi-annual income, and where they might also withdraw them, when the necessities or interest of the institution should require it, directed the money on hand to be invested in stock of the *Phoenix* bank; that on the 4th of *September*, 1821, when the accounts of the bank were made up for their semi-annual dividend, the plaintiffs, by their authorized agent, caused the sum of 20,000 dollars to be paid into the bank, for the purpose of paying for 200 shares of stock therein, for which the plaintiffs, by such agent, offered to subscribe; which sum the defendants, by their servants and agents, received, and have ever since kept, but then, and ever since have, refused to permit the plaintiffs to subscribe for stock in the bank, or to give them any certificate of their owning stock therein; by which they were deprived of a privilege peculiarly appropriate to such an institution. The bill prayed for a decree, directing the defendants, under a suitable penalty, to permit the plaintiffs to subscribe, for 200 shares of stock, for the use of the institution; and to pay the dividends to which they would have been entitled, had they been permitted to subscribe.

The bill was demurred to, with an understanding between the parties, that the plaintiffs should claim no benefit from the reception of the money by the bank, except as laying a foundation for dividends or interest; and that the following statement should be considered as a part of the case.

The donations to the *Asylum* from individuals, from its first establishment to the 12th of *May*, 1822, amount to - - - - - - - $23,462 20
The contributions from Religious Societies to the 12th of *May* 1822, to - - 2,742 03
_____
$26,204 23

*Hartford,*
*June,*
1822.

Asylum
*v.*
Phoenix Bank

The disbursements on account of the pupils from 13 different states, amount to - - - - - -    59,838 03

The receipts from and on account of the pupils, including 5000 dollars from the state of *Connecticut,* to the 12th of *May,* 1822, amount to    $42,270 52

And outstanding debts due from the pupils, say, about    - - -    3,400 00
                                                                45,670 52

                                                                14,167 51

The above account of disbursements does not include the sums laid out on the purchase of the *Scarborough* place, and the erection of the buildings thereon ; neither does the account of receipts include the money arising from a township of land granted by Congress.

A grant was made by the General Assembly of the state of *Connecticut,* at their session, in *October,* 1816, to the plaintiffs, of 5000 dollars, for charitable purposes, *viz.* for the education and instruction of the indigent Deaf and Dumb of this state ; which has been appropriated accordingly. The Congress of the *United States,* at their session begun and held on the 16th day of *November,* 1818, granted to the plaintiffs a township, or a tract equal thereto, to be located in tracts of not less than four adjoining sections in any of the unlocated lands of the *United States,* to which the Indian title has been extinguished ; such lands, or the avails thereof, to be and remain forever, for the use of the plaintiffs, for the education and instruction of the Deaf and Dumb.

The case, thus made, was reserved for the advice of all the Judges.

*N. Terry* and *T. S. Williams,* for the plaintiffs, contended, that they were entitled to subscribe for and receive stock on two grounds.

1. The plaintiffs are a corporation for *charitable purposes,* within the act incorporating the *Phoenix* bank. This appears, first, from the manner in which it originated ; secondly, from the object for which it was created ; and thirdly, from the disposition of its funds. *Porter's* case, 1 *Co.* 24. 26. *Attorney General* v. *Whorwood,* 1 *Ves.* 537. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 518. 638. 1 *Bla. Comm.* 471.

2. This institution is *a school* within the act; by which is meant, a seminary for the acquisition of common learning. Neither the number of the pupils, nor their ages, nor the peculiarities of their condition, nor the mode of instruction, can deprive the institution of its character as a school. The kind of instruction given, is the test; and this is the same as in common schools.

*Gould* and *Mitchell*, for the defendants, contended, 1. That the *American Asylum* is not a corporation for charitable purposes, within the meaning of the act incorporating the *Phoenix* bank. First, it was not made such, by the terms of the act creating it. It is not designated as a charitable institution; nor are any duties of a charitable nature specified, which it is required to perform. Secondly, it has not become such, by dispensing charity; an equivalent being demanded, in most cases, for the support and instruction afforded. In the popular sense, in which the words are used, nothing, short of a permanent appropriation of the great mass of its funds for charitable purposes, will make the institution a charitable one. Thirdly, it has not become such, by receiving donations; as this is incident to all corporations capable of holding property, and does not constitute a distinguishing feature in their character. The grant of a township of land from the *United States*, made after the institution had gone into operation, did not alter its character.

2. That this institution is not a school, within the meaning of the act in question. First, it must be a school for charitable purposes; this being the grammatical construction. Secondly, if not a school for charitable purposes, it must be of a description known to the law, at the time of passing the act. The schools of this description were common district schools, under the inspection and superintendance of the school societies in which they were respectively situated, subject to the power of the visitors, and entitled to dividends from the school fund. The term *school* must be understood with *some* limitation; otherwise, it would extend to seminaries for instruction in fencing, dancing, music, painting, &c.; but any other limitation than the one specified would be perfectly arbitrary.

3. That if the plaintiffs have the right, the form of the remedy is misconceived; first, because a writ of *mandamus* will lie; secondly, because a court of equity will not decree a specific act to be done, except upon a contract *inter partes.*

*Hartford,*
*June,*
*1822.*

Asylum
*v*
Phoenix Bank

*Rex* v. *Barker* & al. 3 *Burr.* 1265. 1267. Sir *James Smith's*
case, 3 *Mod.* 53. *Rex* v. *The Commissioners of the Land-tax*
*in St. Martin in the Fields,* 1 *Term Rep.* 146. 148. *Rex* v.
*Windham, Cowp.* 377. *Com. Dig. tit.* Mandamus. A.

*N. Terry,* in reply, contended, That the remedy sought
was the proper one ; first, because a writ of *mandamus* will
not lie against a *private* corporation,—*i. e.* one which con-
cerns, primarily, the rights of individuals, although the pub-
lic may have an interest therein ; and secondly, because a
*mandamus* would not afford an adequate remedy, as the plain-
tiffs pray for, and are entitled to receive, dividends, from the
time they offered to subscribe, as well as admission to their
right of subscription.

HOSMER, Ch. J. In *May,* 1816, the General Assembly of
this state incorporated *John Caldwell* and others, by the name
of *The Connecticut Asylum for the education of deaf and dumb*
*persons,* with the right of purchasing, receiving and holding
estate, real and personal, the annual income of which should
not exceed 5000 dollars. The funds of this incorporated
company were created, by donations, from individuals, from
religious societies, from the state of *Connecticut,* and from the
*United States.* It is averred, in the plaintiffs' bill, and the fact
is admitted, that the *Asylum,* the name of which has been
changed, by legislative act, to *The American Asylum,* is an insti-
tution, having for its sole object the education and instruction
of the unfortunate who are deaf and dumb ; and that the only
means of doing this are derived from the charity of individ-
uals and of the public. From the pupils instructed at the
*Asylum,* who were of ability to make payment for their ed-
ucation, money has been received ; and those who were not
able, have been supported and educated gratuitously. The
disbursements on account of pupils, have considerably ex-
ceeded the sums received of them, and the funds of the *Asy-*
*lum* have exclusively been applied to the general object of
its institution. The act incorporating the *Phoenix* bank pro-
vides, that the said bank shall, at all times, be open for sub-
scriptions, at the rate of 100 dollars for each share, from any
school or corporation for charitable purposes within this state ;
and under a claim of right, the plaintiffs have deposited with
the President, Directors and Company of the said bank
20,000 dollars, for the purpose of procuring 200 shares of

stock; but their subscription for stock has been refused. The bill of the plaintiffs prays, that the bank be compelled to receive their subscription, and pay the dividends to which they would have had title, had they been permitted to subscribe.

The defendants have presented two objections to the plaintiffs' bill : first, it is said, they are not a school or corporation for charitable purposes ; and secondly, that there is adequate remedy at law.

The interesting and luminous decision of the supreme court of the *United States*, in the case of the trustees of *Dartmouth College* v. *Woodward*, 4 *Wheaton* 518. with which I entirely accord, and to which I shall have a silent reference in my opinion, only renders it necessary to state the grounds of it, very briefly. Eleemosynary corporations, or those created for charitable purposes, are such as are constituted for the perpetual distribution of the free alms of the founders of them, to such purposes as they have directed. Of this description are hospitals for the maintenance of the poor, sick, or impotent, and colleges or schools for the promotion of piety and learning. The establishment of an institution for the dissemination of learning, has always been considered a charity. The true test of an institution is its origin and objects. If it is founded on donations, and has for its purpose the accomplishment of a charity, by the distribution of alms, it most unquestionably is eleemosynary.

The *American Asylum* may, with the strictest propriety, be defined, *an incorporated school for charitable purposes.* It is a *school*, which is a generic term, denoting an institution for instruction or education ; and from the nature of its object, is a private incorporation. Its objects and operations are all of a private character ; and the donations of states to aid in effectuating them, do not, in the minutest degree, change its nature. The institution is exclusively " for charitable purposes ;" its sole object being to pour instruction into the minds of the deaf and dumb ; to elevate them from the lowest degradation of intellect to the dignity of intelligent, and fit them to become moral and religious, beings ; to open their blind eyes, and unstop their deaf ears ; and to accomplish this, through the means of funds, derived from the gratuities of the benevolent. A purpose so honourable and noble, and free from the dross of self interest, brings the *American Asylum* peculiarly within the spirit, as it is obviously within the letter, of the law, which authorises a compulsory subscription of the

*Hartford,*
*June,*
*1822.*

Asylum
*v.*
Phoenix Bank

stock of the *Phoenix* bank. The *Asylum*, in no sense of the expression, is a money-making institution. All its funds are necessarily applicable to the charitable object of educating the deaf and dumb; and this is done gratuitously, except so far as the power of doing good is enlarged, by the sums paid for instruction, by the rich and able. By this operation, the funds of the institution are not absorbed, but augmented; the charitable object of the *Asylum* is not diminished, but promoted; and the nature of it is not changed, but pursued. The funds of the institution are not applicable to any but eleemosynary purposes, nor have they been otherwise applied. If they had, it would have constituted a breach of trust, for which there is a most obvious remedy. And as the trustees are alone authorized to act for the promotion of the benevolent object of the institution; so the donors are, in no event, entitled to any profit, which might arise, from the enlargement of its funds. Be they greater or less, they are consecrated to charity; and this decisively marks the eleemosynary character of the institution.

It has been contended, by the defendants, that the plaintiffs have adequate remedy at law, by writ of *mandamus*.

I think it very doubtful, to say no more, whether the supposed remedy has any existence. The writ of *mandamus* lies to enforce the execution of an act, when otherwise justice would be obstructed; and, regularly, issues only in cases, relating to the public and the goverment; hence it is called *a prerogative writ. Knipe* v. *Edwin,* 4 *Mod. Rep.* 281. *March* 101. It never lies to restore to a private office, or to execute a private right; and that the claim of the plaintiffs is founded on this ground only, there can be no question. *The King* v. *The Churchwardens of Croyden,* 5 *Term Rep.* 713, 4. 4 *Bac. Abr.* 497. 504, 5. *Gwil.* ed. The refusal of the defendants to permit the plaintiffs to subscribe, is the infraction of the private right of individuals, acting through the medium of an incorporation. A *mandamus* is never granted, when a person has another specific remedy; or may bring an action on the case, which affords satisfaction equivalent to specific relief; and that case may be sustained against the defendants, for the privation of the legal rights of the plaintiffs, is beyond dispute. In *The King* v. *The Bank of England, Douglass* 500. it was decided, that the court would not grant a *mandamus* to the bank for the transfer of stock, because there is a remedy by action on the case, if they refuse; and the analogy between

that case and the one under discussion, is very striking.   And
lastly, the remedy by *mandamus*, is discretionary.  4 *Bac. Abr.*
515.  *Gwil.* ed.

But if the above-mentioned remedy might be had, it is not
adequate, because it would not be complete.   It would be
merely prospective, and not reach the exigencies of the case.
The relief on bill in chancery, at one stroke, compels the de-
fendants to permit the plaintiffs to subscribe, and to pay the
dividends, as if they had suffered the subscriptions to have
been made, at the time the plaintiffs requested it.

In this opinion CHAPMAN, BRAINARD and BRISTOL, Js. con-
curred.

PETERS, J. being a stockholder in the *Phoenix* bank, gave
no opinion.

Decree for the plaintiffs.