HUGH HEARNS *vs.* THE WATERBURY HOSPITAL.

Third Judicial District, New Haven, January Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Whatever may be the principle that governs its liability for corporate neglect in the performance of a corporate duty, a charitable corporation which has no capital stock and whose members derive no profit from its operations, is not liable for injuries which result solely from the negligence of a servant in the performance of his duty, where the corporation has exercised due care in his selection. In such case the servant is alone responsible for his own wrong.

[Argued January 17th—decided April 5th, 1895.]

ACTION to recover for injuries sustained by the plaintiff by reason of the alleged negligence of the defendant in treating the plaintiff while a patient in the defendant hospital;

brought to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.*, upon the plaintiff's demurrer to the special defense of the defendant; the court overruled the demurrer, sustained such special defense, and rendered judgment for the defendant, and the plaintiff appealed for alleged errors of the court in overruling his demurrer. *No error.*

The case is fully stated in the opinion.

*John O'Neill*, with whom was *William Kennedy*, for the appellant (plaintiff).

The special defense admits the allegations in the complaint to be true. It is therefore admitted that, for a consideration, the defendant promised to care for the plaintiff, and that it did not do so, to his injury.

Under these circumstances we believe no case can be found which forbids the plaintiff's recovery. *Galvin* v. *Hospital*, 12 R. I., 411; *Parnaby* v. *Canal Co.*, 11 Ad. & E., 223; *Mersey Docks* v. *Gibbs*, 1 H. L., 93; *Winch* v. *Conservators of the Thames*, L. R., 7 C. P., 458; *Smith* v. *West Derby Local B.*, 3 C. P. D., 423; *Gilbert* v. *Trinity House*, L. R., 17 Q. B. D., 795; *Geddis* v. *Proprietors of the Bann Reservoir*, L. R., 3 App. Cas., 430; *Coe* v. *Wise*, 1 Q. B., 711; *Nitro Phosphate* v. *London Docks*, 9 Ch. D., 503; *Queen* v. *Williams*, L. R., 9 App. Cas., 418; *Lime Regis* v. *Henley*, 3 Barn. & Ald., 77; *Hill* v. *Managers of the Metropolitan Asylum District*, L. R., 4 Q. B. D., 433; *Morton* v. *Mayor of N. Y.*, 140 N. Y., 207; *Jones* v. *New Haven*, 34 Conn., 1; *Danbury* R. R. v· *Norwalk*, 37 id., 109; *Weed* v. *Greenwich*, 45 id., 170; *Greenwood* v. *Westport*, 63 id., 587; *Donaldson* v. *The Com'rs of the General Public Hospital of Saint John*, 30 N. B., 279. The case last cited is on all fours with the case at bar.

The *Heriot Hospital Case*, 12 Cl. & Fin., 513, seems to have been followed as the leading case in the case of *McDonald* v. *Mass. Gen. Hospital*, 120 Mass., 432, and in *Boyd* v. *Ins. Patrol*, 113 Pa. St., 269. The *Heriot Hospital* case was founded on *Duncan* v. *Findlater*, 6 Cl. & Fin., 908; and

*Duncan* v. *Findlater* was expressly overruled in the *Mersey Docks* case. It seems to have been thought, in the decision of these two cases, that the funds of statutable boards were trust property; and that trust property could not be taken for the torts of the trustees.

But it has been decided in England that whenever a duty is imposed by statute upon public officers, and costs incidentally arise in questioning the propriety of acts done in the fulfillment of that duty, the public officers have a right to defray those expenses out of the funds they are authorized to administer. *Rex* v. *Commissioners*, 1 B. and Ad., 232; *Rex* v. *Essex*, 4 T. R., 591; Addison on Torts, 733. And whenever necessary expenses are incurred in the execution of a trust, or in the performance of duties thrown on any persons, and arising out of the situation in which they are placed, such persons are entitled, without any express provision for that purpose, to make the payments required to meet those expenses out of the funds in their hands belonging to the trust. *Att. Gen.* v. *Mayor of Norwich*, 2 Myl. and Cr., 425; *Lewis* v. *Mayor of Rochester*, 30 Law J., C. P., 169. Expenses incurred through blunders or negligence may always be charged upon a public or trust fund. *Southampton Bridge Co.* v. *Southampton Board*, 8 El. and Bl., 812.

It is much more reasonable, said Mr. Justice BLACKBURN, in the *Mersey Docks* case, "that the trust property should be amenable to the individual injured, because there is then no failure of justice." This liability is incurred in carrying out the purposes of the trust, and is incident to them. *Benett* v. *Wyndham*, 4 De G., F. & J., 259; *Duncan* v. *Findlater*, 6 Cl. & Fin., 894; *Heriot Hosp.* v. *Ross*, 12 id., 517; *Mersey Docks* v. *Gibbs*, 11 H. L. Cas., 686; *S. C.*, L. R., 1 H. L., 93.

The mere fact that possibly some of the property of the corporation could not be taken by attachment or execution, does not prevent the plaintiff from recovering judgment. In *Hartnall* v. *Ryde Commissioners*, 4 Best & Smith, 361, it was held that a want of funds with which to repair was no defense to an action for negligence. And in *Ohrby* v. *Ryde Commissioners*, 5 Best & Smith, 743, it was held that it was

not necessary to show affirmatively that the commissioners had funds or the means of raising funds, to meet any damages which might be recovered. In *Walsh* v. *Trustees of the Brooklyn Bridge*, 96 N. Y., 427, it was held that the trustees were not liable, because they were public agents only, not a corporate body, and had no fund of their own. Subsequently, when the same plaintiff brought an action against the cities of New York and Brooklyn for the same injury, it was held that the defendants were liable. *Walsh* v. *New York*, 41 Hun, 299.

It is said that this hospital is a public officer or agent, performing public governmental duty with a public fund, and therefore is not liable. The rule of official responsibility appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. Persons chargeable with the duty in such a case are liable for misfeasance. *Bennett* v. *Whitney*, 94 N. Y., 302; *Hayes* v. *Porter*, 22 Me., 371; *Nickerson* v. *Thompson*, 33 Me., 432; *Tardos* v. *Bozant*, 1 La. Ann., 199; *Teall* v. *Felton*, 1 N. Y., 537; *S. C. in Error*, 12 How., 284; *Bishop* v. *Williamson*, 11 Me., 495; *Christy* v. *Smith*, 23 Vt., 663; *Ford* v. *Parker*, 4 Ohio (N. S.), 576; *Brown* v. *Lester*, 21 Miss., 392; *Bank of Mobile* v. *Marston*, 7 Ala., 108; *Amy* v. *Supervisors*, 11 Wall., 136, 138.

*Stephen W. Kellogg*, with whom was *John P. Kellogg*, for the appellee (defendant).

I. The court below did not err in overruling the demurrer to the special defense relating to the first, third, and fourth counts of the complaint.

The statute in regard to charitable uses expressly provides that all estates granted for any "public and charitable use

shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever." General Statutes, § 2951. There is no question that a hospital like this is a charitable institution. That point was settled early in the history of this court by the opinion of CHIEF JUSTICE HOSMER in the case of *Asylum* v. *Phœnix Bank*, 4 Conn., 177. The trustees of such a charity have no power by any act of theirs to divert any of the property or estate, so held for a charitable use, to any other purpose. A court of equity would enjoin them from doing any act of this kind.

II. The defendant is not liable for any of the acts charged in the complaint. Though the question is a new one in this State, the authorities are overwhelming that a charitable institution, like the defendant, is not liable for the negligence or faults of its agents, physicians, or attendants. The only duty of the managers of the institution in this matter is to use due care in the selection of its servants or agents. The well-settled doctrine in England and in this country is that a public charitable hospital, which has exercised due care in the selection of its agents, is not liable for an injury to a patient caused by their negligence. The case of *McDonald* v. *The Mass. General Hospital*, 120 Mass., 432, is almost identical with this case ; and though the opinion is a short one, it is one of the clearest statements of the law that can be found in any case upon this subject. See also *Hill* v. *City of Boston*, 122 Mass., 344; *Benton* v. *Trustees of Boston City Hospital*, 140 id., 13. The same doctrine is recognized as the law of New York. *Maxmilian* v. *City of New York*, 62 N. Y., 160, 167. *Van Tassel* v. *Manhattan Eye and Ear Hospital*, 39 N. Y. S. R., 781. It is also the well-settled law of Pennsylvania. *Fire Insurance Patrol* v. *Boyd*, 120 Penn. St., 624. In *Perry* v. *House of Refuge*, 63 Md., 20, it was held that the corporation was not liable for an assault committed by one of its officers on an inmate of the hospital, and the doctrine of the 120th Mass. was strongly approved. In the case of the *City of Richmond* v. *Long's Administrators*, 17 Gratt., 375, the city was held not liable for the negligence of

its agents in the hospital belonging to the city. Other cases in New York to the same point are *Harris* v. *Woman's Hospital*, 27 Abb. N. C., 43 ; *Lanbheim* v. *DeK. N. S. Co.*, 107 N. Y., 230. The only case to the contrary to be found in the reports of the several States is *Glavin* v. *Rhode Island Hospital*, 12 R. I., 425. It stands solitary and alone. It is not law, and it is supported by no authority either in England or in this country. It recognizes no distinction between a corporation of the trading or money-making character, and the charitable institution, and is not entitled to any weight in view of the overwhelming authority against it. In the Penn. case (*supra*), the learned judge giving the opinion fairly repudiates it as an authority.

*Union Pacific Ry. Co.* v. *Artist*, 60 Fed. Rep., 365, 368 ; *Williamson* v. *Louisville Industrial School*, 15 Ky., 629, 23 L. R. A., 200, and note. In that note are cited causes decided by the highest courts in Indiana, Iowa, Missouri, Kansas, and California, all of them sustaining the doctrine we contend for.

This doctrine has been the settled law of England for centuries. It is older than the statute of the 43d Elizabeth. It is as old as the year books. *Heriot's Hospital* v. *Ross*, 12 C. & F., 507.

III. The defendant cannot be made liable in this case by reason of the fact that the complaint is in the form of contract instead of tort. *Down's Admr.* v. *Harper Hospital*, (Mich.) 25 L. R. A., 602.

HAMERSLEY, J. The Waterbury Hospital was incorporated by special Act of the legislature, "for the purpose of establishing and maintaining a hospital in the town of Waterbury." Under this authority it was organized "for the purpose of furnishing medical and surgical care, nurses, medicines and food, to patients suffering from disease or from injuries." It has no capital stock, and its members can derive no profit from the corporation. These features clearly indicate a "charitable corporation" within the meaning of our law. *Asylum* v. *Phœnix Bank*, 4 Conn., 172 ; *Bishop's Fund* v. *Eagle Bank*, 7 id., 476 ; *Town of Hamden* v. *Rice*, 24 id., 350.

To this hospital the plaintiff applied for treatment of a fractured knee-cap; and brings this action to recover damages for injuries caused, as he claims, by the unskillful and negligent treatment which he received at the hospital.

The complaint, after stating the incorporation of the hospital and the adoption of certain by-laws, alleges that the plaintiff requested of the proper officers admission to the hospital, and promised to pay the defendant such reasonable compensation as it should demand; that the defendant in consideration thereof agreed to treat him with care and skill, and furnish him with surgical care, etc., for that purpose; that the defendant was guilty of negligence in the manner specified, and thereby violated its said agreement and duty; whereby the plaintiff was injured, etc.

The defendant's answer denies the negligence and injury, and sets up a special defense to the action, reciting the purposes of its incorporation, and alleging that its by-laws provided that: "Neither the medical and surgical staff, nor physician or surgeon designated by them, nor any officer of the corporation, shall receive compensation from the hospital in any form for the duties performed in its behalf." To this special defense the plaintiff demurred. The court below overruled the demurrer and gave judgment for the defendant, and the plaintiff appealed from that judgment.

The demurrer to the defendant's answer cannot entitle the plaintiff to judgment if his complaint is insufficient; we therefore pass over the question which might have been raised as to the special defense alleged being a strictly legal way of presenting the defendant's claims, and consider the only question argued before us; namely, does the negligence alleged in the complaint entitle the plaintiff to recover damages from the defendant?

The negligence which caused the injury is stated to have been that of the attending surgeon and attending nurses while in performance of their duties; and in order to confine the issue as closely as possible, it was stipulated by the parties that, solely for the purpose of the disposition of this appeal, and without prejudice to any future proceedings, the

court should assume upon the record that the defendant exercised due care in the selection of nurses, physicians and surgeons, by whose alleged negligence or want of skill and attention the plaintiff was injured.    Possibly it might be claimed that the complaint raises the further question of the defendant's liability for its own negligence in failing to perform its alleged duty of appointing a house physician or interne so called; but such claim has not been made, and we do not think it can properly be made upon this appeal; even if the question were not excluded by the stipulation of the parties, the record fails to show that it was raised on the trial and decided by the court below; it is not specified in the reasons of appeal, and in the argument before us was not discussed.

The only question with which we have to deal is the liability of the defendant for the negligent conduct of physicians and nurses employed by it, and in the selection of whom it has exercised due care.    The conclusion we have reached makes it unnecessary to pass upon the question whether the hospital's attending physicians can really be regarded as standing to the corporation in the relation of servant to master, or to discuss the nature and extent of the corporate liabilities of an eleemosynary corporation.    All questions essential to the disposition of the case presented by this appeal are settled by deciding upon the liability of the defendant for the negligence of its servants; *i. e.,* when a corporation like the defendant employs a servant who does not represent it in the way that every corporation must be represented by its directors or managers, but is simply employed for a special work in the same manner as if employed by an individual for the same work—is such corporation liable for an injury caused in the course of his employment by such servant, and due solely to his negligent conduct?

This question has never been decided in this State; it has however arisen in other States and in England; and has been so intermingled with the different one of the corporate liability of eleemosynary corporations for their own corporate negligence, that the review we make of cases illustrating the

treatment the subject has received from other courts, will necessarily include some cases bearing more directly on the latter question.

The question arose in England in 1824 in the Court of Common Pleas in the case of *Hall* v. *Smith*, 2 Bing., 156. Commissioners for the town of Birmingham ordered a tunnel through a public street; the surveyor and contractor appointed by them to build it failed to put up guard rails or to provide lights. The court held that the commissioners were not liable; not because such a corporation, or *quasi* corporation for public purposes, was not liable for its negligence; not because the surveyor and contractor were not the servants of the corporation (the early case of *Bush* v. *Steinman*, 1 Bos. & Pul., 404, had not then been overruled); but because the rule of *respondeat superior* did not apply. BEST, C. J., said: " The maxim of *respondeat superior* is bottomed on the principle, that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it "; and so the reason of the rule does not apply to trustees for public purposes, acting according to their best judgment and with the best advice.

In 1839, *Duncan* v. *Findlater*, 6 Clark & F., 894, was decided by the House of Lords. It was a Scotch case—an action against the trustees of a turnpike road for injuries caused by the negligence of a surveyor appointed by them. The only question actually decided in this case was that the trustees were not liable for an injury caused by the neglect of a person not standing in the relation of a servant to the trustees. But the language of LORD COTTENHAM went further, and stated the principle that unpaid trustees for public purposes can in no case be liable in their corporate or *quasi* corporate capacity. This statement was rejected in subsequent cases, and in *Trustees Mersey Docks* v. *Gibbs*, *infra*, was distinctly held unfounded in law.

The same year *Parnaby* v. *Lancaster Canal Company*, 11 Ad. & E., 223, was decided, and held that when a statute of incorporation authorized a company to construct a canal and

did not in special terms impose any duty in reference to its use, the general law imposed upon the company the duty to use reasonable care in making navigation secure. The case is pertinent only because it defines the principle of implied corporate duty corresponding to granted corporate powers; which principle subsequent cases hold applicable to powers granted to trustees for public purposes and corporations for charitable purposes, as well as to corporations organized for profit.

*Feoffees of Heriot's Hospital* v. *Ross*, 12 Clark & F., 507 decided in 1846, has been frequently cited in American cases. The action was an attempt to apply trust funds, given by a private donor for founding a hospital (for the maintenance of fatherless boys), to be governed in pursuance of statutes established by him, towards the payment of damages caused by a refusal of the trustees of the fund to obey the statutes of the founder in respect to an applicant for admission to the hospital. The Scotch Court of Sessions ordered damages to be assessed against the fund, and upon appeal to the House of Lords two questions were presented: Did the statutes of the founder give to every eligible person a right to admission on application, without any discretion in the trustees as to selection ? And second, can the damages caused by the wrongful refusal of trustees to admit an applicant entitled of right to admission, be recovered from the trust fund? The House refused to consider the first question, and reversed the order of the Court of Sessions on the ground that the wrong, if any, done to the applicant, was done by the individual trustees who voted against his admission, and that they were liable in an action, and the trust fund was not. In *Duncan* v. *Findlater*, *supra*, the claim had been made that the Scotch practice of using trust funds to pay damages for injuries caused by their managers was authorized by Scotch law, and the House of Lords had decided that it was not authorized by Scotch law; and now, within a few years of that decision, when a Scotch court again holds that the condemned practice is authorized by Scotch law, the House makes short work of the case, refuses to consider a doubtful and important question involved,

or to discuss an authority except *Duncan* v. *Findlater*, which had not been duly respected. The pith of the case appears in the remarks of each of the law Lords in reference to *Duncan* v. *Findlater*. LORD BROUGHAM says : " It would have been better had the court paid more attention to the high authority of that case as decided in this House, than here appears to have been paid to it." The main significance of *Heriot's Trustees* v. *Ross*, is in the assertion of the supremacy of the House of Lords in determining questions of Scotch law ; the uniform severity with which the case has been ignored by the courts at Westminster in the cases which have since dealt elaborately with the question of the liabilities of corporations for public and charitable purposes, indicates that it is not regarded as an authority on the subject in that jurisdiction, and certainly there is nothing in the case that can aid the courts of other jurisdictions.

*Holliday* v. *St. Leonard's*, 11 C. B., N. S., 192, decided in 1861, held that the defendants, the vestry of a parish, were not liable for the negligence of servants in the performance of a public duty with which they were intrusted by statute. The case is decided on the ground that trustees for public purposes are exempt from the application of the rule of *respondeat superior* which would apply to private persons under like circumstances. (It was afterwards claimed that the opinion of ERLE, C. J., seemed to favor the erroneous *dictum* of LORD COTTENHAM in *Duncan* v. *Findlater*, that the exemption rested on the immunity of such corporations from all corporate liability, and not the exemption from the application of the rule of *respondeat superior* as stated by BEST, C. J., in *Hall* v. *Smith ;* but when this claim was pressed in argument of *Coe* v. *Wise, infra,* ERLE, C. J., said, " I certainly never intended so wide a proposition.")

In 1863, the Court of Queen's Bench in the case of *Hartnall* v. *The Ryde Commissioners*, 33 L. J. Q. B., 39, held that trustees for public purposes charged with not having performed a duty cast on them by statute, were liable for special damage, and the court distinguished the case from *Metcalfe* v. *Hetherington*, 11 Ex., 257, where such trustees

were held not liable, because in that case the duty alleged to have been neglected did not clearly appear to have been imposed.

In 1864, *Coe* v. *Wise*, 5 B. & S., 440, was tried in the Court of Queen's Bench. Commissioners were directed by statute to make a cut, and maintain at its opening a sluice to exclude tidal waters. The sluice was properly made; but owing to want of care in the persons employed to maintain it, it burst and flooded adjoining lands. There was no proof of negligence in employing unskillful agents. A majority of the court (MELLOR, J., and COCKBURN, C. J.,) held the defendant not liable. BLACKBURN, J., dissented. MELLOR, J., places the exemption from liability on the ground that the statute in this case did not impose an absolute duty to maintain the sluice, but that the real duty imposed on the trustees was *bona fide* to employ such agents as they believed to be skillful. He assumes the corporate liability for violation of corporate duty in all cases, irrespective of the objects of the corporation, and classifies the cases maintaining the liability of trustees for public purposes as follows: 1. Individual liabilities, where trustees exceed or abuse powers; *i. e.*, where the wrongful act is individual and not corporate, the individual and not the corporation is liable. 2. Where a duty imposed on trustees has been violated by reason of orders given by them for doing the acts from which damage resulted, *i. e.*, liability follows when the negligence is strictly corporate negligence and not the collateral negligence of servants. 3. Where trustees are authorized to maintain works of a trading character, *i. e.*, works to be supported by selling the right to use them—in their nature a substitution on a large scale for individual enterprise—in such cases although the *quasi* corporation is organized for public purposes, yet its corporate liability is not confined to negligence resulting from its direct corporate act, but includes negligence resulting from conduct of its servants; apparently on the ground that the duties imposed by statute on such *quasi* corporation towards the persons to whom it sells the use of the works it is authorized to maintain, cannot be distinguished

from those of a railroad or canal company in dealing with those who purchase the use of their works; and is not affected by the charitable object of the corporation. There is no such element of trading use in the works maintained by the defendant. COCKBURN, C. J., places the exemption from liability on the ground that the negligence complained of is that of servants only. And also that upon proper construction of the statute under which the trustees act, there is no fund at their disposal for the payment of damages resulting from negligence, and that it is absurd to hold, that an action will lie where judgment cannot possibly be satisfied. BLACKBURN, J., dissents, and holds that the defendant is liable on the ground that the jury has found that the injury was in fact caused by want of due care on the part of the defendant in maintaining the sluice. The question whether such a corporation is liable not only for its direct corporate negligence, but also for the negligence of its servants, does not arise. The verdict of the jury that the negligence was the corporate negligence of defendant is conclusive. In referring to the cases which hold that trustees for public purposes are exempt from liability where there has been no direct corporate negligence, but the only negligence is due to the wrongful conduct of persons to whom they stand in the relation of master and servant, he says: " These decisions, or at least the greater part of them, might be supported on the ground that the relation of master and servant did not exist * * *; but this explanation does not apply to *Holliday* v. *St. Leonard's*, the *ratio decidendi* of which seems to me to express that there is an exception from the general rule that masters are responsible for the negligent acts of their servants, when the master falls within the class somewhat indefinitely styled trustees for public purposes; but the doctrine in question has, as it seems to me, no bearing on the present case, since the drainage commissioners are not sought to be charged for the collateral negligence of their servants, but for the non-fulfillment of a duty which was, it is alleged, imposed by Act of Parliament on the drainage commissioners themselves." He also holds that the question raised by COCK-

BURN, C. J., as to the power of the trustees to apply the funds in their control to the payment of damages, does not arise in the case, and is not sufficient ground to deny the right of the plaintiff to a judgment.

An appeal was taken from the judgment of the majority of the court to the Exchequer Chamber. In that court the appeal was held to await the decision in *Mersey Docks* v. *Gibbs*, then pending before the House of Lords, and after the decision in that case was announced, the judgment of the Court of Queen's Bench was reversed on the grounds stated in the dissenting opinion of BLACKBURN, J., as delivered in the court below. *Coe* v. *Wise*, 5 B. & S., 440.

In 1866, *Mersey Docks, Trustees,* v. *Gibbs*, L. R., 1 H. L., 93, was decided. The Mersey Docks Trustees were a corporate body created by Act of Parliament, charged with the care of the Liverpool Docks, and with the collection of the rates levied for their use; the funds so collected, after defraying the expenses of maintenance, were to be applied to the payment of. debts incurred in construction, with a view to the reduction of the rates. The purpose was public and the motive was charitable. Two actions were brought against the trustees by owners of vessels injured in entering the docks. The wrong charged in each action was that the trustees, knowing the entrance of the dock to be unfit for use, neglected to repair it and knowingly suffered it to continue in a condition unfit for use while it was used by vessels with their permission. Judgments were given against the trustees. Upon appeal to the House of Lords, the two cases were heard as one, and the judgments below were sustained. In the House of Lords the unanimous opinion of the common law judges was submitted by BLACKBURN, J., and was adopted by the House as the ground of its decision. This is the leading and best considered English case on the subject; but to understand the bearing of the opinion it must be read in connection with the opinions of MELLOR and BLACKBURN, JJ., in *Coe* v. *Wise*. The judges of the Queen's Bench who had differed in the latter case, agreed in the opinion in *Mersey Docks* v. *Gibbs*, and that opinion as given by BLACKBURN, J.,

is plainly drawn on the lines of the opinion of MELLOR, J., as well as of his own dissenting opinion in *Coe* v. *Wise*. And immediately after the decision of *Mersey Docks* v. *Gibbs*, the same judges who had participated in that decision (except the judges of Queen's Bench), sitting as judges of the Exchequer Chamber, reversed the judgment of the Queen's Bench in *Coe* v. *Wise*, on the grounds of the dissenting opinion of BLACKBURN, J., and in the course of argument ERLE, C. J., affirmed the authority of the decision in *Holliday* v. *St. Leonard's* which had been discussed and not dissented from in *Mersey Docks* v. *Gibbs*. Only by considering the two cases of *Coe* v. *Wise* and *Mersey Docks* v. *Gibbs* together, can we ascertain the true bearing of the opinion in the latter case.

The precise questions presented and answered are: Was the duty imposed on the trustees an absolute duty to maintain the docks in a state fit for use? Can the trustees be guilty of negligence without actual knowledge that the docks are unfit for use? Both are answered in the affirmative. In answering the first question the court holds that the rule of corporate duty and liability laid down in *Lancaster Canal Co.* v. *Parnaby* depends on the nature of the corporate powers and duties, and not on the fiduciary or beneficial purpose of the corporation; and these powers and duties must be determined upon a true interpretation of the statute creating it. When the legislature imposes on trustees for public purposes the duty of maintaining works by trading in their use so that they are in their very nature a substitution for private enterprise, it will be presumed, in the absence of something to show the contrary, that the legislature intends "that the body created by statute shall have the same duties, and its funds shall be rendered subject to the same liabilities, as the general law would impose on a private person doing the same thing." And so in this case the legislature intended to impose upon the trustees the absolute duty of maintenance to the same extent as the general law imposes such duty on an individual carrying on a similar enterprise. In answering the second question the court holds that although the duty of keeping the dock in a fit state for use

could be performed by a corporate body only through servants, yet if the corporation had means of knowing by its servants that the dock was in an unfit state and were negligently ignorant of its state, such negligent ignorance is the neglect of the corporation. In one of these actions the fact of such corporate negligence is admitted by the demurrer, in the other it is found by the jury. The question whether the negligence of the persons actually in charge of the docks was only the collateral negligence of the servants of the corporation, and whether a charitable corporation is liable for the collateral negligence of its servants, is not involved in the decision.

The trustees, however, while not admitting the rule of construction adopted by the court as determining their duty and liability, mainly relied on the broader claim that such bodies as theirs are, by the general law of the country, trustees for public purposes, and being such, they are not in their corporate capacity liable for damages caused by the neglect of their servants to perform the duties imposed on the corporation; or, at all events, that the duty of such corporations is limited to due care in the choice of officers, and such care being exercised, redress must be sought against the officers alone.

The court treats this claim elaborately and holds that it has no foundation in law; that the cases supporting the principle that one who is a public officer, in the sense that he is a servant of the government and as such manages some branch of government business, is not responsible for the negligence of those in the same employment, have no application, because they are decided on the ground that the government is the principal and the public officer its servant, and therefore not liable on general principles of the law of agency. (This principle is laid down by Story in his work on Agency, § 313). Here the defendants are not servants of the public in that sense. That the class of cases cited, which depends on the principle that when the legislature directs a thing to be done and damage results merely from doing that thing, the person acting under such authority is not liable, but com-

pensation can be recovered only under special provisions of the statute legalizing the wrong, has no application. That the cases apparently bearing in favor of the defendant's claim, were decided either on the ground that the injury was caused by a person not standing in relation of servant to the defendant, or upon the ground that in the case of corporations organized to carry on an enterprise in the nature of a public charity, there is an exception from the rule making a master liable for the collateral negligence of his servant. That in such a case as the present the liability does not depend on the relation of master and servant, but on the existence of a corporate duty and the liability for a direct corporate negligence in the failure to perform that duty. *Duncan* v. *Findlater* was properly decided on the ground that the relation of master and servant did not in fact exist, and this was all that was actually decided ; the *dictum* of LORD COTTENHAM, that in no case can such a body be liable for negligence in its corporate capacity, has been rejected in subsequent cases, and is unfounded in law. While much that was said in the judgment in *Holliday* v. *St. Leonard's*, is based on the opinion of LORD COTTENHAM in *Duncan* v. *Findlater*, and open to the same objections, does not support that *dictum ;* but the point actually decided was that there is an exception from the general law making a master liable for the negligence of his servant where the servant is employed by a public body—this point which the case decides, does not now arise. And the court significantly says : " It is necessary, in considering these authorities, to bear in mind the distinction between the responsibility of a person who causes something to be done which is wrongful, or fails to perform something which there was a legal obligation on him to perform, and the liability for the negligence of those who are employed in the work." In the case of the latter liability, *i. e.*, the liability of a master for the collateral negligence of his servant, it has been decided that there is an exception from the general law when the servant is employed by a public body, and that point does not arise in this case ; in respect to the former liability, *i. e.*, the liability of a corporation for corporate neglect in the performance of a

corporate duty, there is no case which decides there is an exception from all liability in favor of public or charitable associations ; and the *dictum* of LORD COTTENHAM in *Duncan* v. *Findlater* is not law.

*Levingston* v. *Guardians of Lurgan Union*, 2 I. R. C. L., 202, decided in Ireland in 1868, is of interest as showing one bearing given to the decision in the above cases at the time. The action was against the Poor Law Guardians in their corporate capacity.    It was held that where a corporation or public trustees acting gratuitously for public purposes, cause damage by a tortious act without having funds with which to compensate the party injured, they are responsible in their corporate capacity.    WHITESIDE, C. J., says, p. 219 : " Upon the ultimate decisions in these two cases, *The Mersey Dock Trustees* v. *Gibbs*, and *Coe* v. *Wise*, it must, I think, be now taken as established : first, that unless the provisions of the legislature, by express enactment, or necessary implication otherwise determine, an action for such a wrong as that which is the subject of the present suit lies against a corporation, or public trustees acting gratuitously for public purposes ; secondly, that they are not exempted by the legislature from this liability, because the legislative provisions which regulate them do not provide funds out of which damages recovered in an action against them can be paid, or because these provisions specially apply their funds to purposes not including the payment of such damages ; and thirdly (what indeed may be considered as, in principle, comprised in the second proposition), that this liability subsists, although no property, whether provided by Act of Parliament, or otherwise, be shown to exist, liable to execution upon a judgment."

In 1871, the Court of Queen's Bench in the case of *Foreman* v. *Mayor of Canterbury*, L. R. 6 Q. B., 214, undertook to overrule the decision of the Court of Common Pleas in *Holliday* v. *St. Leonard's*.    The opinion is given by BLACKBURN, J., and he says that *Holliday* v. *St. Leonard's*, as an authority for the principle that there is an exception to the rule of *respondeat superior* when the servant is employed by

a corporation for public or charitable purposes, was overruled by the decision of the House of Lords in *Mersey Docks* v. *Gibbs*; forgetting that in the opinion in that case delivered by himself, and in which the Chief Justice of the Court of Common Pleas who delivered the opinion in *Holliday* v. *St. Leonard's* concurred, he said that the point decided in the latter case " does not arise in the present case, so that it is unnecessary directly to decide anything upon it." *Foreman* v. *Mayor of Canterbury* is not a well considered case on this point; indeed the point is not at all discussed on principle, and the decision rests wholly on an assumption of the action of the House of Lords which the record proves to be untrue. The authority of *Holliday* v. *St. Leonard's* on this point was distinctly and carefully left unquestioned, both in *Mersey Docks* v. *Gibbs*, and in *Coe* v. *Wise*. The most that can be said is that in *Foreman* v. *Canterbury* the Court of Queen's Bench differs from the Court of Common Pleas; the influence of the decision, however, is to be plainly noticed in subsequent cases.

In *Queen* v. *Williams*, 9 App. Cas., 418, decided in 1884, the rule in *Mersey Docks* v. *Gibbs* was applied where similar powers and duties had been given by Act of Parliament to the executive government of New Zealand. The action was brought under authority of the Crown Suits Acts of 1881.

In *Gilbert* v. *Trinity House*, L. R., 17 Q. B. D., 795, decided in 1886, the defendant was a private guild or corporation established some 500 years ago for charitable and public purposes, such as the relief of the poor, maintenance of religious services, promotion of the interests of mariners, etc. In very early days when beacons along the coast were mainly private property, it undertook their maintenance, at first perhaps as a charity, and gradually acquired rights and powers to collect tolls; such funds, however, were devoted wholly to the original charity and relief of poor mariners. Under recent statutes the powers and duties of the corporation in reference to light-houses and beacons were largely increased. The corporation was sued for damages caused by negligence in the removal of a beacon, leaving a portion of it under water.

The broad claim made in behalf of trustees for public pur-
poses, in former cases, was again made in behalf of this pri-
vate corporation. The question was, " are the defendants
liable to be sued at all in respect of injuries caused by reason
of the negligent condition in which beacons, or the remains
of beacons, vested in them, are kept? " The court held that
the recent legislation enlarging the powers of the defendant,
did not make it an agent or servant of the government, or
alter the character of the corporation ; it remained a private
corporation as before. The principle of *Mersey Docks* v.
*Gibbs* was applied to this corporation, and stated more broadly
and with less discrimination than it was stated in that case
twenty years before. DAY, J., says : " The law is plain that
whosoever undertakes the performance of, or is bound to per-
form, duties—whether they are duties imposed by reason of
the possession of property, or by the assumption of an office,
or however they may arise—is liable for injuries caused by
his negligent discharge of those duties. It matters not whether
he makes money as a profit by means of discharging the duties,
or whether it be a corporation or an individual who has under-
taken to discharge them. It is also immaterial whether a per-
son is guilty of negligence by himself or by his servants. If
he elects to perform the duties by his servants, if in the nature
of things he is obliged to perform the duties by employing
servants, he is responsible for their acts in the same way that
he is responsible for his own."

The English rule was recently (1890) applied in New
Brunswick to trustees incorporated for the maintenance of
a public hospital. *Donaldson* v. *The Commissioners of the
General Public Hospital in St. John*, 30 N. B., 279. The
action was for injury caused to a person admitted to the hos-
pital, by negligent failure to supply the necessary medical
and surgical attention. The questions were raised by a de-
murrer to the declaration. The court held that the duty the
defendant owed the plaintiff, as alleged, was admitted by the
demurrer, and a breach of that duty by the negligent failure
to supply any medical or surgical attendance which he had
the right to have supplied, was also admitted ; and therefore

the claim that the duty imposed on the defendant was in fact fulfilled by exercising due care in selection of physicians, and in having necessary appliances, etc., was not in the case ; for such facts, if they are an answer, should be set forth by way of plea. That admitting the defendant to be a public charitable institution, that fact does not exempt it from this action for negligence ; a public charitable institution is liable to be sued for negligence.

The first case in the United States to which our attention has been called, was decided in Virginia in 1867. *City of Richmond* v. *Long's Adm'rs*, 17 Gratt., 375. It was an action for the value of a slave lost by negligence on the part of servants of a hospital. Liability was denied on the ground that the managers of the hospital exercised governmental powers ; that under the Virginia laws the managers of the hospital were exercising governmental powers, and the government was the principal or master, and therefore the rule of *respondeat superior* did not apply.

*Maxmilian* v. *Mayor, etc.*, 62 New York, 160 (1875), was an action against the city. The only question decided was that under the New York statute the Commissioners of Public Charities were not the agents or servants of the city, and therefore the city was not responsible for the negligence of a servant employed by the commissioners.

*McDonald* v. *Massachusetts General Hospital*, 120 Mass., 432, was decided in 1876. It was an action against the hospital for negligent surgical treatment. The court distinctly held that a hospital, being a public charitable institution, is not liable for the negligence of a servant when it has exercised proper care in his selection. But the *ratio decidendi* is not entirely clear ; apparently the decision is based on the authority of *Holliday* v. *St. Leonard's*, and if so, it is an authority for the principle that there is an exception to the rule of *respondeat superior*, when the negligent servant is employed by a public charitable corporation. Subsequently a similar question arose in *Benton* v. *Trustees of City Hospital of Boston*, 140 Mass., 13. The accident was caused by the negligence of the superintendent of a building owned by the city of Bos-

ton and used as a hospital under the management of corporate trustees appointed by the city. The court said that if the trustees could be regarded as trustees of a public charity, the case came within *McDonald* v. *Massachusetts General Hospital;* but held that under the statute incorporating them, the trustees were agents for the city, that the city in the performance of the duty of maintaining the hospital was not liable for negligence, because the case came within the principle of *Hill* v. *City of Boston,* 122 Mass., 344, where JUDGE GRAY in an elaborate opinion and exhaustive review of the cases, defended the Massachusetts doctrine of non-liability of municipal corporations; and also of *Tindly* v. *City of Salem,* 137 Mass., 171, which somewhat extends that doctrine. And in *Donnelly* v. *Boston Catholic Cemetery Asso.,* 146 Mass., 163, the court states that *McDonald* v. *Massachusetts General Hospital* was decided on the ground " that the defendant was a public charitable institution under the laws of the Commonwealth; " and *Benton* v. *Trustees of Boston City Hospital* on the ground that the real duty was imposed by statute on the city for public benefit, that the city would not be liable under the rule stated in *Tindly* v. *Salem* and *Hill* v. *Boston,* and therefore a mere statutory agent without property, intervening between the city and the actual wrong-doer, was free from liability.

In 1880, the question came up in Rhode Island, in *Glavin* v. *Rhode Island Hospital,* 12 R. I., 411. The plaintiff claimed damages, first on the ground of negligence of the corporation in the selection of an interne who was employed as a surgeon, and to whose surgical care the plaintiff was committed. The court held that the defendant was liable for its corporate negligence in the selection of its physicians. Second, on the ground of the negligence of the interne, while acting as a surgeon, in his careless and unskillful treatment of the plaintiff. The court held that the defendant was not liable on this ground; that the hospital does not undertake to treat the patient through the agency of the surgeon, but only to procure his services, and therefore the relation of master and servant does not exist, and the hospital is only liable for a

breach of its duty to use proper care in the selection of the surgeon. Third, on the ground that the plaintiff, being in a critical condition, it was the duty of the interne, under a hospital rule, to send immediately for an attending surgeon, and the duty of the corporation, under a special provision of its charter, to put the rule in execution. The court held that, while the interne acts as surgeon and when so acting, he may not be the servant of the corporation, yet he also is appointed to perform other duties, and when acting in such capacity the relation of master and servant exists; that the corporation undertakes in critical cases to send for one of its staff of surgeons; this duty is imposed upon it in pursuance of the special terms of its charter, and can only be performed by the corporation through an agent; the interne is its agent for that purpose, and his neglect is that of the corporation, and for such neglect the defendant is liable. The broad claim was also made that the defendant, by reason of being a public charitable corporation, was exempt from all liability. The court held that this broad claim was not supported by any cases cited—discussing the English and Massachusetts cases; that the theory of a public policy which forbids the use of corporate funds in any case to compensate for injuries inflicted, is not sound; there is no such public policy, and the establishment of such a policy is a question for the legislature; that the theory that the corporate funds are trust funds and their use to pay a judgment would be a violation of trust, is unsound; that the result of the English cases is: (*a*) Where there is a duty, there is a *prima facie* liability for neglect; and a corporation being created for certain purposes which cannot be executed without the use of care or skill, it becomes the duty of the corporation to exercise such care, and funds acquired for the purposes of its creation will be applied to satisfy a judgment for its default in this respect. (*b*) The corporate funds can be applied notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts and is incident to them; that these rules for corporations for public purposes apply equally to corporations like the Rhode Island Hospital.

*Fire Insurance Patrol* v. *Boyd*, 120 Pa. St., 624, was de-
-cided in 1888.   This was an action against a corporation
organized to aid the city government of Philadelphia in pres-
ervation of life and property at fires, for an injury caused by
the negligence of its servants employed at a fire.   The court
held that under the laws of Pennsylvania the defendant, in
the performance of its duties, was acting in aid of the munici-
pal government in the performance of a governmental duty,
and in such case the rule of *respondeat superior* has no appli-
cation; for the State and not the defendant is the superior.
The court further held that the funds of a public charity can-
not be taken to compensate injuries by negligence of agents,
and says : " It would be carrying the doctrine of *respondeat
superior* to an unreasonable and dangerous length.   That
doctrine is at best—as I once before observed—a hard rule."

In 1891, the question was somewhat discussed in the New
York Court of Common Pleas, in *Harris* v. *The Woman's*
*Hospital*, 27 Abb. N. C. 37.   But the case was decided on
questions of fact ; no actual negligence or want of care was
found on the part of the hospital authorities, the surgeons or
the nurse.

During the past year the question has arisen in three
cases.   In Kentucky, in the case of *Williamson* v. *Louisville
Industrial School*, 23 L. R. A., 200, where the liability of the
defendant for injuries committed by its agents was denied,
on the sole ground that this corporation was a mere agent of
the State exercising governmental functions.   In Michigan,
in *Downs* v. *Harper*, reported in 25 L. R. A., 602, a hospital for
the insane was sued by the representatives of a patient who
had escaped from the strong room of the hospital, jumped
from a window, and so was killed.   The negligence alleged
was that of the trustees in the construction of the building,
and of the employees in the care of the patient.   Judgment
was given for the defendant.   Perhaps the decision might be
sustained on other grounds, but the reasoning of the court
fairly tends to support the extreme claim of the defendant
in this case.   There is, however, a distinction that may have
strongly influenced the language of the court.   The Harper

Hospital was originally a private foundation by deed convey-
ing property to trustees on a specific trust; these trustees
were subsequently incorporated under a general statute. It is
possible that by the Act of incorporation the corporate powers
were limited to administration of the original trust in accord-
ance with the laws established by the founders; if this were
so, the corporate capacity would be reduced to the minimum,
and the defendant might be held not liable upon a construc-
tion of the terms of its charter, without questioning the lia-
bility of an eleemosynary corporation for injuries committed
in pursuance of its corporate powers.

The case of *Union Pacific Ry. Co.* v. *Artist*, 60 Fed. Rep.,
365, decided by the United States Circuit Court of Appeals,
does not deal at all with the relation of a corporation, whe-
ther business or eleemosynary, to its corporate funds, nor
directly with the nature of the duties imposed on a public or
charitable corporation by its charter; the only question con-
sidered or decided in respect to a corporation is, that any
corporation, when it undertakes an act of charity not within
the purposes of its incorporation and which it is under no
legal obligation to perform, assumes the same personal duties,
neither more nor less, that an individual assumes who under-
takes a similar act of charity; and that a corporation in admin-
istering a trust fund distinct from its corporate funds, held
by it on a specific trust, stands in the same position as an
individual who administers a trust fund for a similar purpose.
But the case is of peculiar interest as maintaining the pro-
position that an individual establishing hospital accommo-
dations as a charity, undertakes no duty towards those who
accept them as a free gift, except the duty of using reason-
able care in providing such accommodations; and that if one
is injured through negligence, not of the individual in the
performance of his personal duty, but of the servants employed
by him, the principal is not liable, because such case does not
come within the reason of the rule of *respondeat superior*, and
such rule has no application. As this proposition is true of
a corporation as well as of an individual, the court held that
the railroad corporation which had established hospital accom-

modations as such a charity, was not liable in a suit to recover
for injuries caused through the negligence of the servants it
had employed; that the doctrine of *respondeat superior* has
no just application, and " it was responsible for the discharge
of its own personal duty, and not for the performance of the
duties of its employees." This is the most direct application
we have found in an American case of the doctrine which in
*Hall* v. *Smith* and *Holliday* v. *St. Leonard's* was applied to
corporations established for public and charitable purposes.

It is apparent that there are marked differences in these
cases, both as to results and the process by which results are
reached. These differences mainly appear in the tests adopt-
ed for ascertaining in each case what is a corporate duty and
what is a corporate neglect; in the confusion of the *quasi* trust
arising from the restriction which binds every corporation to
apply its corporate funds to the purposes for which it was or-
ganized, with the relation of a strictly legal trustee to his trust
funds; and especially in the various means by which courts
have sought to escape the patent injustice of applying the
extreme doctrine of *respondeat superior* to the personal de-
faults of employees of charitable institutions. But we think
the drift of all the cases clearly indicates a general convic-
tion that an eleemosynary corporation should not be held
liable for an injury due only to the neglect of a servant, and
not caused by its corporate negligence, in the failure to per-
form a duty imposed on it by law; and we are satisfied that
this general conviction rests on sound legal principles.

The law which makes one responsible for his own act, al-
though it may be done through another, and which is ex-
pressed by the primary meaning of the maxim *qui facit per
alium facit per se,* is based on a principle of universal justice.
The law which makes one responsible for an act not his own,
because the actual wrongdoer is his servant, is based on a
rule of public policy.

The liability of a charitable corporation for the defaults of
its servants must depend upon the reasons of that rule of
policy, and their application to such a corporation. The rule
is distinguished as the doctrine of " *respondeat superior* " ;

although that phrase is used broadly in reference to any relation of principal and agent, thereby causing much confusion.    Here we use it in the narrow meaning suggested by its origin.    The phrase is taken from the words of the Statute of Westminster Second, Charles II.: "*Si custos gaolæ non habeat per quod justicietur vel unde solvat, respondeat superior suus qui custodiam hujus modi gaolæ sibi commisit.*"    As LORD COKE tells us (2 Inst., 382), this law was intended only for those who " having the custody of gaols of freehold or inheritance commit the same to another that is not sufficient."    As sheriffs originally profited through the appointment of their sub-officers, the rule of the statute was applied to sheriffs, although they were not included in its letter. This statute was passed before the first Year Book was kept, at a time when the English law was " without form."    It recognized an injustice, and declared a rule of public policy, *i. e.,* an injury done by one who is irresponsible must be answered for by his superior, when for his own convenience and emolument that superior has given the wrongdoer the opportunity of committing the injury.    This rule of public policy modified the development of the law of master and servant from the beginning, and in this way infused into the law of agency a sort of fictitious agency depending not on the principle of justice that makes one responsible for his own act, but on a rule of public policy which under certain circumstances estops one from showing that the act in question was not his own.    This view is suggested by the opinion of BEST, C. J., in *Hall* v. *Smith, supra,* and is the occasion of his emphatic declaration that "*respondeat superior*" is bottomed on the principle that he who expects to derive the advantage from an act done for him by another, must answer for any injury which a third person sustains from it.

The reasons for the rule have been differently stated by others.    In *Maxmilian* v. *Mayor etc., supra,* the rule is based upon the right which the employer has to select his servants, to discharge them if not competent, and to control them while in his employ.

In Dicey on Parties to Actions, Rule 102, 445, the liability

is stated as " analogous to the liability of an owner for inju-
ries committed by animals belonging to him. Neither the
master nor owner is liable because he has himself done the
particular act complained of. He is responsible because the
wrong is the result of his having in the one case employed
the incompetent servant, and in the other kept an animal of
habits injurious to his neighbors." Here the policy stated
seems to be that the master should not only be liable for his
negligence in the employment of servants, but should be held
as a guarantor that none employed by him should abuse their
opportunities. And a similar notion is expressed in Wood
on Master and Servant, § 277, *i. e.*, that the penalty of liabil-
ity is imposed in order to secure in the master " the exercise
of proper care and diligence in the selection and retention
of his agents." Wharton, Law of Negligence, § 157, gives
as the reason of the policy, that " he who puts in operation
an agency which he controls, while he receives its emolu-
ments, is responsible for the injuries it incidentally inflicts ";
relying on LORD BROUGHAM's statement in *Duncan* v. *Find-
later*, " I am liable for what is done for me and under my
orders by the man I employ, for I may turn him from that
employ when I please: and the reason that I am liable is
this, that by employing him I set the whole thing in motion;
and what he does, being done for my benefit and under my
direction, I am responsible for the consequences of doing it."

This defendant does not come within the main reason for
the rule of public policy which supports the doctrine of *re-
spondeat superior ;* it derives no benefit from what its servant
does, in the sense of that personal and private gain which
was the real reason for the rule. Again, so far as the per-
sons injured are concerned, especially if they be patients at
the hospital, the defendant does not " set the whole thing in
motion " in the sense in which that phrase is used as express-
ing a reason for the rule. Such patient, who may be injured
by the wrongful act of a hospital servant, is not a mere third
party, a stranger to the transaction—he is rather a participant.
The thing about which the servants are employed is the heal-
ing of the sick. This is set in motion, not for the benefit of

the defendant, but of the public; surely those who accept the benefit, contributing also by their payments to the public enterprise, (and not to the private pocket of the defendant) assist as truly as the defendant in setting the whole thing in motion.

But the practical ground on which the rule is based is simply this: On the whole, substantial justice is best served by making a master responsible for the injuries caused by his servant acting in his service, when set to work by him to prosecute his private ends, with the expectation of deriving from that work private benefit. This has at times proved a hard rule, but it rests upon a public policy too firmly settled to be questioned.

We are now asked to apply this rule, for the first time, to a class of masters distinct from all others, and who do not and cannot come within the reason of the rule. In other words, we are asked to extend the rule and to declare a new public policy and say: On the whole substantial justice is best served by making the owners of a public charity, involving no private profit, responsible not only for their own wrongful negligence, but also for the wrongful negligence of the servants they employ only for a public use and a public benefit. We think the law does not justify such an extension of the rule of *respondeat superior*. It is perhaps immaterial whether we say the public policy which supports the doctrine of *respondeat superior* does not justify such extension of the rule; or say that the public policy which encourages enterprises for charitable purposes requires an exemption from the operation of a rule based on legal fiction, and which, as applied to the owners of such enterprises, is clearly opposed to substantial justice. It is enough that a charitable corporation like the defendant—whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty—is not liable, on grounds of public policy, for injuries caused by personal wrongful neglect in the performance of his duty by a servant whom it has selected with due care; but in such case the servant is alone responsible for his own wrong.

This result is justified by the opinions in *Hall* v. *Smith*, *Holliday* v. *St. Leonard's*, and *Union Pac. Ry. Co.* v. *Artist*, *supra*, substantially on the grounds above stated; and is reached, for one reason or another, by the greater number of courts that have dealt with this particular liability of a corporation for public or charitable purposes.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.