FREIBERG, KLEIN & Co. v. B. H. & S. I. Co.

(Case No. 2009.)

1. PRINCIPAL AND AGENT. — A contract between a hotel company and the manager of the hotel was treated by the parties as a lease, and provided that the manager should take the hotel from July, 1883, to April, 1884, and pay the company twenty per cent. of the gross results of the whole business, after deducting $200 per month for his services. *Held*, that the company would be liable, notwithstanding the character of the contract, if the company, in its relations with one furnishing supplies for the hotel, treated him as its agent for their procurement; otherwise the company was not liable.

2. DISTRICT JUDGE — PRACTICE. — Evidence should be admitted before a jury, if proper, without comment from the judge calculated to affect its weight.

APPEAL from Galveston. Tried below before the Hon. Wm. II. Stewart.

This suit was brought to recover for liquors and cigars furnished by appellant for the use of the corporation known as the "Beach Hotel and Seaside Improvement Company." It appeared in evidence that all the stock of that corporation was owned by another corporation known as the Galveston City Railroad Company, between

whose president, W. H. Sinclair, and Pierce, the appellee, the following correspondence passed:

"NEW YORK CITY, May 22, 1883.

"*Mr. William H. Sinclair, President Beach Hotel Co., Galveston, Texas:*

"DEAR SIR — I will submit the following propositions:

"*First.* To pay the owners six per cent. of the actual cost of the property and hotel fully furnished, and thirty-three and one-third per cent. of the net profits after paying all the expenses of the hotel and keeping.

"*Second.* To pay the owners twenty per cent. of the gross results of the whole business after deducting $200 per month for my services.

"*Third.* As manager, salary $100 per month, and ten per cent. of the net profits in addition.

"In each case living expenses for myself, wife and son to be allowed, and engagement for five years, and I to have full control in all and every department.

"Yours truly,    J. H. PIERCE."

In response to this the following telegraphic reply was sent:

"*J. Harvey Pierce, Grand Central Hotel, New York City:*

"Board to-night accepted your second proposition to extend to April 1, 1884. If business relations mutually agreeable and satisfactory, will have no trouble in arranging. Expect to be ready to open July 1.    W. H. SINCLAIR."

Sinclair testified that the lease made was to terminate April 1, 1884. "Pierce came out and the terms were accepted; there was no other writing. The defendant did not run the hotel. Pierce took charge as lessee and proprietor. He was to furnish his own supplies and pay his own bills. The defendant was to furnish and equip the hotel, which it did, and turned it over to Pierce. The hotel was not finally finished until some time after Pierce opened it. Pierce had full control. Defendant had nothing to do with his purchases, and never inquired into them. Witness had been applied to by many firms in the city, and had always told every one that Pierce was lessee and owner of the business. No bills were rendered to defendant by plaintiffs or any one else. That the Beach Hotel Co. did not run the hotel. Pierce was not its manager, but its lessee. He acted as his own manager as well as proprietor. The lease was in force when the goods were sold and delivered."

Witness read from the files of the Galveston Daily News, dated July 2, 1883, announcing the opening of the hotel and its attractions,

etc., signed by Pierce as proprietor. All advertisements of the house were similarly signed.

Before the hotel was opened, plaintiffs wrote Col. Sinclair a letter soliciting a share of the business, and he answered it, referring them to Mr. Pierce. The letter was substantially as follows:

"Personal."

"GALVESTON, June 29, 1883.

"*W. H. Sinclair, Esq., President, City:*

"DEAR SIR — Upon the near event of the opening of the Beach Hotel, we presume that solicitations for supplying the bar-room with liquors, etc., are in order; hence we apply, with the hope that we may be given a fair showing in this particular, feeling confident that we can please in every respect.

"Very truly yours,    FREIBERG, KLEIN & Co.

"We only ask for a showing at it, not for any preference."

The following was the indorsement on a separate sheet attached thereto:

"[Memorandum.]

"*W. H. Sinclair, President; M. Patten, Secretary; James Raveey, Superintendent.*

"OFFICE GALVESTON CITY RAILROAD Co., GALVESTON, TEXAS.

"Respectfully referred to Mr. J. Harvey Pierce, manager. This is a good house and they are good friends of ours. All things being equal, I should like to see them have a share of your trade.

"Respectfully,

"W. H. SINCLAIR, President."

Col. Sinclair's reply to Freiberg, Klein & Co. was in substance as follows:

"GALVESTON, TEXAS, June 30, 1883.

"*Messrs. Freiberg, Klein & Co., Galveston, Texas:*

"GENTLEMEN — Your 'personal' in regard to share of trade at the Beach Hotel is received, and I have referred the same to Mr. J. Harvey Pierce, who is in charge of such matters, with the following indorsement: 'This is a good house, and they are good friends of ours. All things being equal, I should like to see them have a share of your trade.' You had better go and see him.

"Very respectfully,

"W. H. SINCLAIR, President."

Plaintiffs offered in evidence a number of letters signed by W. H. Sinclair as president, besides that of June 30, 1883, to plaintiffs, wherein Pierce was mentioned as the manager of the hotel. The defendant excepted thereto, and the court admitted the letters in

evidence, but remarked at the time of doing so that he "did not see what the letters had to do with the case."

The court charged the jury as follows:

"If you believe from the evidence that the Beach Hotel and Seaside Improvement Company were a corporation engaged in running a hotel and saloon, and that J. Harvey Pierce was the managing agent of said corporation in operating a hotel and saloon, and that the account of goods, wares and merchandise sued on were sold by plaintiffs to said J. Harvey Pierce for supplying the hotel and saloon, then your verdict should be for the plaintiffs, for the proven value of the goods and interest thereon at the rate of eight per cent. per annum from the 1st day of January next after the sale of the goods.   But unless you so believe from the evidence, your verdict must be for the defendant; for if you believe from the evidence that the defendant, the Beach Hotel and Seaside Improvement Company, rented out or leased the hotel and furniture to J. Harvey Pierce, and that he, after first deducting $200 per month, was to pay twenty per cent. of the gross receipts for rent of the hotel and furniture and fixtures, and the plaintiffs sold the goods, wares and merchandise to J. Harvey Pierce, then the plaintiffs cannot recover and the verdict must be for the defendant.   The mere fact that the Beach Hotel building and furniture may have been owned by the defendant would not render the defendant liable to pay the plaintiffs' account.

"The important question in this case is whether J. Harvey Pierce was the proprietor, or merely an agent of the defendant.   For, if J. Harvey Pierce was the lessee and proprietor, and not the agent of the defendant, then the plaintiffs cannot recover their account against the defendant, but would have to look to Pierce for pay and not to defendant.

"You are not to be influenced by any prejudice against the defendant because of its being a corporation; but you are to try this case without prejudice, just as though the defendant were a private individual.

"You are the judges of the weight of the testimony, and of the credibility of the witnesses.

"If you believe from the evidence that the defendant is the owner of the Beach Hotel and furniture, and that it leased the same to J. Harvey Pierce for an interest in the gross receipts after deducting $200 for him, and that this lease was in force at the time when plaintiffs' debt was contracted, then I charge you that the letter of plaintiffs to Wm. H. Sinclair, president, and his letter of reply

thereto, did not make the defendant liable for the plaintiffs' account.

"The mere fact that the plaintiffs may have charged the goods in the first instance to J. Harvey Pierce would not defeat a recovery against the defendant, if the proof should satisfy you that said Pierce was merely the agent of the defendant."

*Davis & Sayles*, for appellants.

*Hume & Shepard*, for appellee.

WILLIE, CHIEF JUSTICE.— This suit was brought to recover the value of certain goods alleged to have been sold by Freiberg, Klein & Co. to the appellee, and the defense was rested upon a general denial of the allegations of the petition.

The evidence fully proved the sale of the goods to one J. H. Pierce, and it was sought to fix the liability of the appellee by showing that in the purchase of the goods he was acting as its agent.

Under the general issue, therefore, it was incumbent upon the appellants to show either that Pierce was actually the agent of the company or that it held him out as its agent to the world, or at least to parties dealing with him on the faith of such agency.

Pierce was in the apparent control of the Beach Hotel at Galveston, which belonged to the appellee, and these goods were bought by him for use in that hotel.

An important question in the case was as to the capacity in which he controlled this establishment, whether as lessee and on his own account, or whether as manager and agent of the company, appellee in this cause.

It was proved that when the hotel was about completed the company tried to get a lessee for it, and with that view opened a correspondence with Pierce and others. An agreement was finally made with him to take it from July, 1883, to April, 1884, he to pay the owners twenty per cent. of the gross results of the whole business after deducting $200 per month for his services. It was fully shown that the appellee had nothing to do with the hotel during the time it was under the control of Pierce, and no other interest in it except such as grew out of the company's right to twenty per cent. of the gross receipts.

The contract appears upon its face to be one of lease, and this interpretation of it is aided and made certain by the fact that it was so treated by the parties thereto. The direct testimony of the persons having most knowledge of the agreement and the manner in which it was construed is directly to the fact that it was intended

FREIBERG, KLEIN & Co. v. B. H. & S. I. Co. [Galv. Term,

as a lease and operated as such during the whole time it was in force. Under such circumstances, in a contest between the company and Pierce, neither party could have insisted upon a different construction or claimed any benefit from having it declared a different contract from the one that they had made and had treated as a lease from the beginning.

This being the case, third parties could not insist upon a different and unauthorized construction in order to give them a right against one of the parties which was dependent wholly upon the relation which the makers of the agreement bore towards each other.

Upon the state of the evidence bearing upon the real nature of the contract, the charge of the court was therefore correct and unobjectionable. It submitted fairly to the jury the question of whether Pierce was lessee or agent, and did not attempt to control their judgment upon the facts relating to that question.

The plaintiffs, however, were entitled to recover, notwithstanding Pierce was lessee and not agent of the company, provided he was held out or represented to the world or to the plaintiffs by the company as their agent for such purchases, at or before the time the goods were purchased.

There does not seem to be any evidence of such conduct on the part of the appellee, unless the letter from the appellants to Sinclair of June 29, 1883, and the latter's reply, can be considered as such. These letters amount to nothing more than a solicitation of business from the proprietors of the hotel, and an answer showing that applications of that sort must be made to Pierce, who was in charge of such business. There is no admission, tacit or otherwise, in Sinclair's reply that Pierce was the agent of the company, but a mere recommendation to him of Freiberg, Klein & Co. as good friends of the company. It was no more than what a disinterested person might have said in recommending another to the good offices of a third party, and furnished Freiberg, Klein & Co. no ground for concluding that Sinclair's company were conducting the hotel, and Pierce was their agent in managing it. That it did not lead them to this conclusion is evident from the fact that they did not charge the first sales to the company, but to Pierce himself. That they subsequently changed the style of keeping their accounts for goods bought by Pierce must have been caused by something else, and could not have been induced by these letters.

We think, therefore, that the court did not err in excluding them from the consideration of the jury, in case they found that the contract was a lease and not an agency. And for the same reason the

court did not err in refusing to charge upon the subject of a liability created by holding Pierce out to the world as agent of the company, as there was no evidence of that fact before the jury. If it had been shown that the subsequent correspondence of Sinclair with Pierce and others had been made known to the appellants before making these sales, then there might possibly have been some evidence upon which to have based such a charge.

Neither did the court err in refusing to charge as asked by the plaintiffs. Charge No. 1 so asked was fully and more specifically given in the general charge.

Charge No. 3 should not have been given, because there was no fact before the jury supporting such a charge, as the letters to which we have alluded, directed to Sinclair as president, and replied to by him as such, were unimportant, and it therefore made no difference whether or not they were legally binding upon the company.

We regard the remark made by the judge below in admitting the subsequent letters to the jury as an improper one, and had it been excepted to at the proper time, and the letters had been properly before the jury, we should feel that it was an error for which the judgment should be reversed. Evidence should be admitted, if at all, without comment from the judge calculated to increase or decrease its weight with the jury.

But the bill of exceptions shows that no objection was taken to the language until four days after the trial had occurred. It should have been taken immediately upon the judge making use of the language, so as to have given him an opportunity of correcting his remark, and placing the evidence upon its proper footing before the jury.

Besides, the letters were not proper evidence, and the remark, if it caused the jury to entirely disregard this evidence, worked no damage to the plaintiffs below. If admissible at all, these letters could be received only for the purpose of impeaching Sinclair's testimony, and no proper predicate had been laid for that in his previous examination.

This disposes also of the question raised as to the affidavit of the jurors in reference to the effect the remark of the judge had upon them in forming their verdict, without the necessity of considering the general right of a juror to impeach his verdict for a misunderstanding of the language of the judge before whom the case was tried.

If these letters had caused them to find a verdict for the plaintiffs,

their verdict would have been unsupported by testimony, and should have been set aside.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered March 6, 1885.]