## CITY OF CORPUS CHRISTI v. FRED ROBERTS MEMORIAL HOSPITAL.

### No. 4460.

Court of Civil Appeals of Texas. El Paso.

April 4, 1946.

Rehearing Denied May 2, 1946.

Owen D. Cox, City Atty., of Corpus Christi (Bill Prewett, Asst. City Atty., of Corpus Christi, on the brief), for appellant.

L. L. Gragg, of Corpus Christi, for appellee.

PRICE, Chief Justice.

This suit was instituted in the District Court of Nueces County by the Fred Roberts Memorial Hospital against the City of Corpus Christi, seeking the cancellation of certain taxes assessed by the city against land owned by the hospital, and in and upon which a hospital was conducted. Exemption from taxation as a public charity was claimed under Section 2, Article 8 of the Constitution, Vernon's Ann.St., and Section 7, Article 7150, Vernon's Annotated Texas Statutes. The trial was before the court without a jury. Judgment was rendered in favor of the hospital against the city, canceling the taxes and enjoining the city from seeking to collect same. The city perfected appeal to the San Antonio Court of Civil Appeals, and the Supreme Court transferred the appeal to this court.

For convenience we shall hereafter refer to the plaintiff in the trial court as corporation, and the defendant as city.

This case was largely tried upon stipulated facts, and the only question presented by the appeal is has the law been correctly applied to the undisputed facts?

The corporation was incorporated on December 8, 1924, as a charitable corporation. The hospital belonging to it is located on Lots 9 and 11 of the Homesite Subdivision to the city. It was built with funds donated by the Protestant churches and organizations within the city and adjacent territory. The corporation has fifteen directors. Its corporate purposes are purely charitable; it has never declared a dividend; it is not legally competent so to do. Its officers and directors receive no compensation; it is an institution of purely public charity. The property involved was taken into the city limits in 1939. Neither the state nor county has ever assessed taxes against this property since it was acquired by the corporation. Since the incorporation of the hospital grounds within the city it has been operated in the manner set out in a renewal contract dated November 2, 1944, between the corporation and Mr. and Mrs. Ed Sizer, Jr. Mrs. Sizer is a registered nurse. Hereinafter Mr. and Mrs. Sizer will be referred to as administrators. It is thought best to set out this contract in full:

"The State of Texas
County of Nueces

This contract of employment and agreement made and entered into by and between

430

the Trustees of the Fred Roberts Memorial Hospital a corporation, a Charitable Institution, acting by and through its duly authorized agents, towit, C. W. Gibson, President, H. B. Beard, Vice-President, and David T. Peel, Secretary-Treasurer, hereinafter called the Board, and Mr. and Mrs. Ed. R. Sizer, Jr., hereinafter called Administrators, Witnesseth:

The Board hereby appointed and designates Mr. and Mrs. Ed. R. Sizer, Jr., Administrators of the property known as the Fred Roberts Memorial Hospital to manage, operate and administer said hospital facility under the following terms, conditions and limitations, towit:

1. The administrators shall take charge of, manage and operate the above named facility.

2. The Administrators are authorized to make rate and prices for the services and hospitalization rendered at said hospital; to handle said funds, and in their name or names and at their discretion to use such lawful means as may be available to them to affect collection of said revenues and accounts.

3. The Administrators are to pay all operating expenses promptly as same comes due and payable from the income realized from the operation of said hospital.

4. The Administrators are authorized to enter into such contracts and agreements with governmental authorities to render and furnish hospitalization as may seem to them proper and advisable.

5. From the revenues produced by the use of the Fred Roberts Memorial Hospital, or otherwise, the Administrators agree to turn over to the Board each month the sum of three hundred and no/100 dollars ($300.00) to be placed in a Maintenance Fund to be used by the Board in the upkeep and maintainance of the hospital plant and equipment, as may seem proper and advisable to the Board.

6. As compensation for their services in the management and operation of said hospital, the Administrators shall, after the payment of all of the current expenses incident to the operation of said hospital and the payment to the Board of that sum of money mentioned in paragraph five (5)

above, retain all of the revenues of the hospital as their own.

7. The Board agrees to maintain the hospital plant and equipment in a good state of repair, making such additions and repairs as may seem fit and proper upon written request of the Administrators.

8. The Administrators shall, out of the current revenues of the hospital, furnish and supply all such floating equipment necessary, such as linens, kitchen furniture and equipment, food, laundry, etc., as they deem proper. It being understood and agreed that the Administrators have no power or authority to bind or commit the Board of Trustees to any obligation or debt of any kind.

9. The Administrators shall devote all their time to the administration of the hospital.

10. It is understood and agreed by the parties hereto that the Trustees own such furniture, fixtures and equipment located in said hospital, as may be agreed upon between the parties, said property to be listed in an inventory which shall become a part of this agreement. Additional inventories and lists of property shall be made from time to time upon request by the Board showing all additions and losses which may occur.

11. It is understood and agreed that this contract of employment shall continue in force and effect for five years, subject however to amendment or revocation by either party after giving written notice of such intention one hundred and twenty days in advance.

The Administrators accept the employment hereinabove provided for under the terms and conditions herein set out.

Witness our signatures this the 2 day of Nov. 1944.

(Corp. Seal)
 Fred Roberts Memorial Hospital, Inc.
  By C. W. Gibson,
   President,
  H. B. Beard,
   Vice-President,
  David T. Peel,
   Secretary-Treasurer
  Ed. R. Sizer, Jr.,
  Mrs. Ed. R. Sizer, Jr."

Under this contract the administrators had the following obligations: The unconditional obligation to pay the corporation $300 per month, this to be paid although they might operate the hospital at a loss; to pay all operating expenses from the current revenues of the hospital, and to devote all their time to the administration of the hospital. After the discharge of these obligations to the corporation the administrators had the right to retain all of the revenue of the hospital as their own; likewise they had the uncontrolled discretion to fix the rates for all hospitalization and to collect therefor. They likewise by fair implication had, we think, the right to the exclusive possession of this property.

It is very clear if any charity was extended in the operation of this hospital it was at the expense of the administrators. They were in no way bound to extend charity to anyone. On the payment of $300 per month and the current expenses they had untrammelled control of the hospital. The corporation had not the right to employ or discharge a single employee, or to control one in any manner. Under the contract the corporation had no contractual relationship with those receiving hospitalization therein.

It is to be noted that the parties refer to this contract as contract of employment and agreement. Intrinsic in a contract of employment is the right to control. Here the manner of conduct of the hospital represents the will of administrators, rather than the will of the corporation. In the opinion of the majority the relationship created by the contract has many of the elements of that of landlord and tenant. Freiberg, Klein & Co. v. B. H. & S. I. Co., 63 Tex. 449; Fink v. Brown, Tex.Com.App., 215 S. W. 846; Ogus v. Foley, Tex.Civ.App., 241 S.W. 267; affirmed Tex.Com.App., 252 S. W. 1048; Johnson v. Murray Co., Tex.Civ. App., 90 S.W.2d 920.

It was stipulated between the parties as follows:

"The said Mr. and Mrs. Ed. R. Sizer, Jr., have made periodical reports, and reports at other times as requested by the officers and Board of Directors of Plaintiff corporation, of the salaries and wages of employees, costs of operation of the hospital, numbers and kinds of patients and hospital services rendered, income received from the operation of the hospital, conduct of the School of Nursing (the facilities of which have, since the beginning of the war, been extended to and used by the United States Cadet Nursing Corps for the training of cadet nurses along with other nurses trained by the hospital), * * *. That the sum of $300.00 per month provided in said contract to be turned over to the Board of Directors of Plaintiff corporation to be placed in a maintenance fund has been placed in such fund and used by plaintiff in the upkeep and maintenance of the hospital plant and equipment. That Mr. Ed. R. Sizer, Jr., died in March, 1945, and Mrs. Ed. R. Sizer, Jr., has tendered her resignation to the officers and Board of Directors of Plaintiff Corporation effective June 1, 1945.

"The hospital has never excluded any reputable licensed physician or his patients from use of the facilities of such hospital but on the contrary the facilities of the hospital have been extended to all ethical licensed physicians and their patients."

There was testimony that while the hospital was operated under the agreement aforesaid that some charity was dispensed.

It is stated in substance in the City of Longview v. Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112, that Sec. 2, Art. 8 of the Constitution has been paraphrased by the Supreme Court as follows: "But the Legislature may, by general laws, exempt from taxation * * * all buildings used exclusively and owned by * * * institutions of purely public charity."

Beyond a doubt, under the case just cited and the case of State v. Settegast, Tex. Com.App., 254 S.W. 925, if the contract under which this hospital was operated created the relation of landlord and tenant, this property is not used by the corporation exclusively for public charity. The corporation exists for the purpose of public charity, and if this property is used exclusively by it for purely public charity it is entitled to the exemption. It seems to the majority that the administrators paid the corporation $300 per month for the privilege of operating for their own benefit in the buildings owned by the corporation, this hospital. It is true they were bound to operate a hospital; bound to devote their en-

tire time thereto, but after shouldering the burdens imposed by the contract they were entitled to all profits made in the operation. It is thought that the corporation does not operate the hospital conducted in the buildings and on the grounds known as the Roberts Memorial Hospital. The very recent case of Markham Hospital v. City of Longview, Tex.Civ.App., 191 S.W.2d 695 (W.R.) illustrates the strictness with which exemptions from taxation are construed. There the corporation was a charitable one, as here. It was engaged in the operation of a hospital, and made no profit from such operation. With its assent and permission a technician was allowed to use some of the laboratory apparatus in a private business of his own. It is thought that under fair construction of the opinion that this was a part of his compensation. The use was very small, but it was in his private business. It was held this deprived the hospital of exemption arising from the use of its property for purely public charity. Here, under the contract the administrators may operate the hospital entirely for their own private profit. Under the reasoning in the City of Longview v. Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112, and Markham Hospital v. City of Longview, Tex.Civ.App., 191 S.W.2d 695, it could make little difference if this right were accorded as payment for services rendered, or as the consideration for the $300 per month paid by the administrators.

It is not thought that a charitable corporation operating a hospital in its own property may not out of the revenue derived pay the expenses of operation, including salaries of employees. It is thought for the property to be exempted the corporation must itself operate the hospital and the entire property be devoted by it to purely public charity. Whether the contract under which the administrators conducted this hospital be called a lease or an operating agreement, the hospital was not operated by the corporation through its agents or employees, hence was not operated by the corporation.

The following authorities are deemed in a general sort of way to support the holdings herein: Morris v. Lone Star Chapter, etc., Masons, 68 Tex. 703, 5 S.W. 519; City of Houston v. Scottish Rite Assn., 111 Tex. 191, 230 S.W. 978; Santa Rosa Infirmary v. City of San Antonio, Tex.Com. App., 259 S.W. 926; BPOE Lodge v. City of Houston, Tex.Civ.App., 44 S.W.2d 488 (Wr.Ref.).

It is ordered that the case be reversed and here rendered in favor of the defendant.

SUTTON, Justice (dissenting).

It was my purpose on the original disposition of this case merely to have noted the fact that I did not concur in the conclusion the contract creates the relationship of landlord and tenant. This conclusion is reached on the grounds, among others, that the contract contains no terms or phraseology that would indicate it was intended by the parties to be a lease contract. On the other hand, it is styled one of employment. The hospital is a corporation, and what the Sizers undertook to do and agreed to do was nothing more than what some official of the corporation might have done and what had to be done if the institution functioned at all. The contract places upon the Sizers certain duties and responsibilities that had to be assumed by some one. The provision for the payment of $300 monthly is of no special significance or importance. It is stipulated that the money went into a maintenance fund and was used in the maintenance and upkeep of the hospital plant and equipment. This is permissible and in no wise impairs its exemption. Nor is there anything extraordinary about the provision which makes the excess revenues the property of the Sizers. This arrangement was calculated to secure to the institution a more efficient administration of its affairs and functions and hold out to the Sizers the prospect of an increase of their earnings in excess of what might have been stipulated as a fixed salary.

As is stated in the original opinion the case must be determined upon the terms of the contract. It is thought there is no provision in it that would distinguish it as a rental contract rather than one of employment. The interpretation of it by the parties is reasonable and practical, and it beyond question fixes the duties and responsibilities of the parties and from its terms

they may not escape in dealings had between themselves and the public. Had the Sizers incurred obligations in the name of the hospital in the due course of its administration it seems no court could or would have difficulty in fixing liability on the hospital and subjecting its assets to the satisfaction thereof.

Of course, if the Sizers were employees of the hospital then the administration of its affairs was by the corporation. If the excess revenues the Sizers received for their services were in lieu of salary or wages, then there were no profits. Under the terms of the contract it seems to me that is exactly the situation, which is not unusual to permit employees in these modern times to share in the earnings of a concern which is calculated, at least, to make their interest more real and personal.