Dr. Truman TERRELL, Appellant,

v.

Eula COCKRELL, Appellee.

No. 15672.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 6, 1956.

Rehearing Denied Feb. 3, 1956.

No appearance for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DAVIDSON, Judge.

This is a conviction for drunken driving upon a public road in Gregg County.

The record before us contains no statement of facts or bills of exception.

The jury assessed appellant's punishment at three days' confinement in jail and a fine of $50.

When the trial court came to enter judgment on such verdict, however, no reference was made to that portion of the punishment assessing confinement in jail for three days.

A trial court may not receive a verdict and give effect to part of it and ignore some other part and enter another and different judgment from that called for by the verdict. Cagle v. State, 147 Tex. Cr.R. 140, 179 S.W.2d 545; Hardy v. State, 159 Tex.Cr.R. 54, 261 S.W.2d 172.

We have concluded, however, that this court has the power and authority to reform the judgment so as to follow the verdict and impose the punishment assessed by the verdict. Accordingly, the judgment is reformed so as to fix appellant's punishment at confinement in jail for a term of three days and a fine of $50.

As so reformed, the judgment is affirmed.

Cantey, Hanger, Johnson, Scarborough & Gooch, J. A. Gooch and George R. Bridgman, Fort Worth, for appellant.

Martin & Moore and Elvin E. Tackett, Fort Worth, for appellee.

MASSEY, Chief Justice.

A charitable hospital contracted with a doctor to operate all the hospital activities. A patient in the hospital sustained injuries due to an attendant's negligent performance of delegable duties. The patient brought suit against the doctor for negligent tort under the theory that the attendant's negligence was imputable to him under the principle of respondeat superior. The patient contended that the contract between the hospital and the doctor constituted the latter an independent contractor as a matter of law, pursuant to whose operations under the contract the plaintiff sustained her injuries. Judgment in the trial court was returned in favor of the patient as plaintiff and against the doctor as the defendant. The defendant appealed.

Judgment reversed and rendered.

For convenience of the opinion, the parties will be designated as plaintiff, defendant, attendant, and hospital. Only plaintiff Mrs. Eula Cockrell and defendant Dr. Truman Terrell were parties to the suit.

The hospital is a public, non-profit, charitable institution, incorporated, with a charter as such from the State. Its general purpose is by its charter prescribed to be "to provide for the nursing of sick and destitute persons, and such patients as may choose to apply for admission under the rules and by-laws to be adopted by the trustees." It is further provided in the charter that the corporate affairs shall be conducted by a "Board of Trustees". In the by-laws of the corporation is the provision that "The internal management of the hospital shall be under the control of the superintendent who shall be elected by and subject to the supervision and control of the Board of Trustees."

By a contract dated August 11, 1949, entered into between the hospital and the defendant, approved in the minutes of the Board of Trustees for the hospital as a contract "wherein Dr. Terrell is employed to manage the hospital for eleven years from this date," with date of approval the same as the date of the contract, the hospital designated and appointed the defendant as its general representative, for a period of eleven years, to supervise, direct, operate and manage the hospital and all its physical properties, giving and granting to the defendant, during the entire term of the contract, the full, complete and sole power and authority to direct, supervise, operate and manage all the business of the hospital and all physical properties of the hospital used in connection with its business, with the added proviso or condition, to-wit: "all

subject to the terms and provisions of First Party's (the hospital's) charter, by-laws and this contract." The hospital further bound itself by the terms of the contract to so cooperate with the defendant to the end that his operation and management of the hospital "shall be successful and satisfactory and the hospital shall continue as a prosperous institution serving the uses and purposes for which it was established * * *." The compensation provided by the contract to be delivered to the defendant as consideration for his performance of services thereunder was a "salary of $500.-00 per month payable monthly as it accrues, * * *." Additional compensation which might be considered as a consideration to and in behalf of the defendant under the contract was the right to operate (as an individual enterprise and business) a laboratory and X-ray service at the hospital premises, without any charge to be made of defendant for the space necessary therefor, or for the utilities and ice utilized in the prosecution of such business.

The defendant agreed to "devote a reasonable amount of time (but not necessarily his entire time) to supervision, direction, operation and management * * * in accordance with the terms, conditions and stipulations of this agreement and in accordance with the charter and by-laws. * * and to employ and retain competent, efficient and experienced persons and technicians to assist in the supervision, direction, operation and management of said hospital to the end that the said hospital may be operated as a successful, highly regarded institution carrying out the purposes for which it was established."

Further provisions of the contract were for the maintenance of records and accounts in connection with business bookkeeping. It is clear that it was intended that collections made for hospital services would be handled and considered as having been made for the hospital. Provision was made that the defendant would not be liable or responsible to the hospital for the failure on his part to collect any indebtedness incurred by third parties in connection with hospital services furnished to them. It was provided that any money coming into the hands of the defendant for such services, or as from a donor (to the hospital), should be considered a part of the operating income (of the hospital) and that it could be appropriated for the payment of any of the obligations or indebtedness mentioned in this contract (all of such indebtedness mentioned being that of the hospital) or for such other purpose not inconsistent with the charter and by-laws as its Board of Trustees may determine.

In August of 1953, the plaintiff was admitted to the hospital premises as a patient in need of ordinary hospital services. She was given sedation and placed in a bed equipped with guardrails which could be raised or lowered. An attendant was set over her, as well as over other patients in the vicinity, and there was a general order conveyed to this attendant that in the case of any patient under sedation, the patient should not be left unattended at a time when the guardrails had not been raised in position so as to prevent the patient from falling from the bed. Disregarding the general order, the attendant charged with the duty of caring for the plaintiff left the guardrails on plaintiff's bed down at a time when the attendant was not present thereat, in consequence of which plaintiff fell from the bed and was injured.

We are not in doubt that the duty of the hospital, or its management, which included the defendant, to maintain a condition of safety for the plaintiff during the period of her sedation included the delegable duty of raising the guardrails on the bed. Baptist Memorial Hospital v. Marrable, Tex.Civ.App., San Antonio, 1951, 244 S.W.2d 567, writ refused, n. r. e. This is merely mentioned in passing, as we do not view this question to be posed in the case under consideration. It does serve to demonstrate, however, that the hospital, as a charitable institution, was or would be exempt from liability to the plaintiff for the negligence of the attendant had it, rather than the defendant, been the party against which the plaintiff sought to recover damages.

There are two reasons why we have arrived at the conclusion that the trial court erred in rendering a judgment against the defendant in this case.

In the first place, we believe that the attendant was the agent, servant and employee of the hospital, and not of the defendant. Except for the consideration of the provisions of the contract itself, in consequence of which the plaintiff considers it to be established that the defendant became an independent contractor in the operation of the hospital's business and properties, there would be no question but what the hospital was the master and employer of the attendant. We quote from a recognized authority, viz.: "It is well settled that, where an employee, acting under the express or implied authority of his principal, engages servants to perform work for the benefit of his employer, the principal, and not the employee, is in law the master of the servants so engaged." LaBatt's Master & Servant, 2nd Ed., p. 102 et seq., sec. 32. That the employee, so engaging and supervising the servants, is the agent or servant of his principal in these respects is apparent from a case cited by the author of the text, as follows: "In Blake v. Ferris (1851) 5 N.Y. 48, 55 Am.Dec. 304, the court said: 'One class of cases embraces those where the men or servants, though actually employed by a third person, are employed for, in the name of, and at the expense of the primary principal, and are continued subject to his control,—as seamen employed by a master of a vessel, servants hired by a steward, laborers hired to work on a farm by a general superintendent, workmen to work in a manufactory by a managing agent; in all of which, and similar cases, the person who employed the men is himself an agent for that purpose, and he, as well as the men whom he engaged, are paid by the general principal, and subject to his control. In such cases, they are the agents or servants of the general principal, and he is their responsible superior.'" See 10 Tex.Jur., p. 981, "Corporations", sec. 325, "General Manager".

The hospital, if it was to function at all, necessarily had to do so through agents, servants and employees. It is noted that in its by-laws it provided that the internal management of the hospital should be "under the control" of a superintendent, to be elected by and to be subject to the supervision and control of its Board of Trustees. That the period of the contract with the defendant was for eleven years we do not deem as consequential, or as any different from the situation were it only for a month. In either event, if the hospital was truly the employer it could dispense with the defendant's services at any time, necessarily assuming, of course, any appropriate legal obligation to pay proper damages to the defendant for so doing. The inference which obtains that the contract was one of employment between a master and a servant or between an employer and employee is not overcome, nor is an issue of fact raised, by virtue of the fact that the defendant was by the contract given the right to hire and fire the employees at the hospital, and to supervise them in the details of their employment, for they were employed in the name of the hospital, paid in the name of the hospital, and supervised and controlled in the name of the hospital. The hospital had the right, through the discharge of the defendant in any event, to assume the right of supervision and control of the employees at the hospital at any time, though it is interesting to note that in the assertion of such right, it would necessarily have to be through another agent, servant and employee endowed with the authority to exercise that very supervision and control. It would only be through a contract of the character of a lease of the hospital's physical premises to the defendant, perhaps coupled with a contract partaking of the nature of the one entered into, that it would be possible for the defendant to be properly termed an independent contractor. We do not believe that a fact issue exists in the present instance which would entitle a jury to make a factual determination other than that of master and servant. Note is taken that plaintiff's injuries are in no wise connected with the defendant's operations at the premises of his laboratory business, which might be properly de-

nominated leased premises, and as to such part, were it involved in this case, the defendant might indeed stand individually liable to third persons injured pursuant to the operation of his business. See City of Corpus Christi v. Fred Roberts Memorial Hospital, Tex.Civ.App., El Paso, 1946, 195 S.W.2d 429, writ refused, n. r. e.

In the second place, we are of the opinion that should we be considered in error in the first, nevertheless the defendant would be no more chargeable with the attendant's negligence than would be the hospital were it indisputably the master of the attendant. In neither instance would the principle of respondeat superior apply, for the rationale or reason for its normal application fails as to the defendant for the same reasons that it fails as to the hospital. There is no question but what the principle would not be applicable in the case of the hospital. An analysis of the basis for its proper application in any instance, and of the reason why it is inapplicable in the case of a charitable hospital, demonstrates, in our opinion, why it would also be inapplicable to the defendant in the instant case.

In the case of Steele v. St. Joseph's Hospital, Tex.Civ.App., Fort Worth, 1933, 60 S.W.2d 1083, error refused, the principle of law upon which Texas acknowledges charitable hospitals to be excluded from the operation of the doctrine of respondeat superior was stated by way of language quoted from the case of Hearns v. Waterbury Hospital, 1895, 66 Conn. 98, 33 A. 595, 31 L.R.A. 224. The Supreme Court of Texas "refused" the application for writ of error, holding that the principles of law declared in the opinion of this court were correctly determined. The St. Joseph's Hospital, a charitable organization, derived no benefit in the determinative sense upon which the doctrine depended from what its employee attendants did or did not do in connection with the performance of their delegated duties. It derived no benefit in that determinative sense because it did not stand to gain profit or sustain a loss as does a commercial enterprise in business with the hope and expectation of profit. The patient, if a paying one, did not deliver consideration unto the hospital which enured to its "pocket" profit, but rather did such consideration enure to the benefit of the public in whose interest the hospital business was carried on. The hospital, if in the possession of funds over and above the amount requisite to the prosecution of the hospital functions, was charged as a trustee thereof and obligated to use it in furtherance of its general charitable purposes. Baylor University v. Boyd, Tex.Civ.App., Dallas, 1929, 18 S.W.2d 700.

Under the contract of the defendant with the hospital in the present instance, he derived no benefit in that determinative sense, because he did not (in like manner as the hospital did not) stand to gain profit or sustain loss as an individual in business for profit. The consideration to be received by him was no different in amount whether the hospital business profited or failed to profit. To make him liable and responsible in damages for the negligence of the attendant merely exposed him to loss, with no compensating advantage to be received if the attendant was careful and non-negligent. From a careful analysis of the whole case of Hearns v. Waterbury Hospital, supra, we are of the opinion that there would be no more reason to extend the rule of respondeat superior so as to include the defendant than would be the case as considered in the instance of a charitable hospital.

The judgment is reversed and rendered.

On Motion for Rehearing.

 On motion for rehearing the appellee points out that appellant waived any right he might have had to contend that his operation of the hospital was a charitable enterprise since it was never raised in his pleadings. We concur with appellee. The matter dwelt upon in the latter part of the opinion would be of no benefit to appellant for he did not plead affirmatively in connection with such a defense. We therefore abandon it as a premise for reversing the case.

We nevertheless adhere to our reasons for reversing the case on other grounds. The motion for rehearing is overruled.